761 So.2d 53 (2000)
James SPIRO
v.
LIBERTY MUTUAL FIRE INSURANCE COMPANY, et al.
No. 99-CA-1797.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 2000.
*54 Geoffrey P. Snodgrass, Geoffrey P. Snodgrass, A Professional Law Corp., New Orleans, LA, Counsel for Appellee.
Victor A. Dubuclet, III, Borrello, Huber & Dubuclet, Metairie, LA, Counsel for Defendant (Liberty Mutual Insurance Company).
(Court composed of Judge WILLIAM H. BYRNES, III, Judge MOON LANDRIEU, Judge JAMES F. McKAY, III).
LANDRIEU, Judge.
Defendant, Liberty Mutual Insurance Company, appeals the district court's granting of summary judgment in favor of its co-defendant, Progressive Security Insurance Company.
This appeal arises out of a single car collision on I-10 West in which James Spiro was injured while riding as a passenger in his own vehicle. Spiro's vehicle was being driven by defendant David Butscher. It is undisputed that Butscher was solely at fault in causing the accident.
As a result of the accident, Spiro brought suit against Butscher, Liberty Mutual (Butcher's insurer), and his own insurer, Progressive Security Insurance Company. Butscher's policy provided $500,000 in liability coverage; Spiro's policy also provided $500,000 in liability coverage. Butscher is the named insured under the Liberty Mutual policy and also qualifies as an omnibus insured (permissive user) under Spiro's policy with Progressive.
Because of the severity of Spiro's injuries, Progressive tendered its $500,000 policy limits to Spiro, but reserved its rights against Butscher and Liberty Mutual. Liberty Mutual settled out of court with Spiro for the sum of $265,000. Progressive then filed a Motion for Summary Judgment on its cross-claim for contribution against Liberty Mutual, alleging that the policies provided concurrent coverage and therefore each insurer was liable for its pro rata (in this case, equal) share of Spiro's damages. Liberty Mutual opposed the motion, arguing that as a matter of law, the Progressive policy, covering the vehicle, was primary, and the Liberty Mutual policy, covering the driver, was excess. Liberty Mutual further contended that there were genuine issues of material fact precluding summary judgment, arguing the trial court could not award a money judgment on the basis of the out-of-court settlements alone, without damages having been fixed by a trial on the merits.
*55 The trial court granted Progressive's motion. Relying on Chedville v. Insurance Company of North America, 95-0170 (La.App. 4 Cir. 11/16/95), 664 So.2d 1310, the court rendered summary judgment declaring the two policies to be concurrent and ordering Liberty Mutual to pay Progressive the sum of $117,500. ($382,500, which is one-half the total settlement of $765,000, less $265,000, the amount already paid by Liberty Mutual, equals $117,500).
On appeal, Liberty Mutual raises the following two issues:
1. The trial court erred by concluding that the "Other Insurance" clauses contained in the two policies are mutually repugnant and that each insurer should be cast for its pro rata share.
2. The trial court erred by rendering a monetary judgment against Liberty Mutual in the absence of a judicial determination of damages.
Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts. Stevedoring Services of America, Inc./Logistic Services, Inc. v. Kahn, 98-0926 at p. 3 (La. App. 4 Cir. 12/9/98), 726 So.2d 53, 55. Thus, we must determine whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Cressionnie v. Liberty Mutual Insurance Company, 98-0534 at p. 3 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, 366, writ denied, 98-1262 (La.6/19/98), 721 So.2d 476.
This first issue raised by appellant is a purely legal question that may be resolved by examining the specific language of each policy and referring to the applicable case law. Although the appellant avers otherwise, there is no statutory authority for the proposition that the coverage on the vehicle is primary. As we stated in Chedville v. Insurance Company of North America, supra, the Louisiana Uninsured Motorist law, La. R.S. 22:1406, does not apply to the instant case, which does not involve an uninsured motorist. In this instance, because there is no statutory or public policy governing the ranking of insurance, the law requires that the court give effect to the actual language of each policy, to the extent possible.
The specific clauses we are called to interpret are as follows:
1. Progressive's "Other Insurance" clause:
If there is other applicable insurance on a loss covered by this Part, we will pay the proportionate share our limits of liability bear to the total of all applicable liability limits. However, any insurance afforded under the Part for any person other than you, or for a non-owned car, including a temporary or substitute car, is excess over any other collectible liability insurance.
2. Liberty Mutual's "Other Insurance" Clause:
If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
The trial court found these two clauses to be mutually repugnant because if both were enforced, they would cancel each other out and neither insurer would be liable. Therefore, the court adopted the solution of Chedville, which was to make each insurer liable for its pro rata share. The Chedville case arose from an accident involving a school bus that was owned by the Archdiocese of New Orleans, but was being used by the Plaquemines Parish public school system. The bus driver, who was at fault, was employed by the Plaquemines Parish School Board. The Archdiocese had an excess policy, and the School Board had a primary policy with an "Other Insurance" clause declaring that the coverage *56 for a non-owned vehicle was excess. This court's resolution in Chedville followed the rule first set forth in Graves v. Traders & General Insurance Co., 252 La. 709, 214 So.2d 116 (1968), which makes each insurer liable in proportion to the limit of its respective policy.
The appellant argues that the trial court's decision herein is erroneous because it violates the public policy, announced in Hearty v. Harris, 574 So.2d 1234, 1237 (La.1991), that the coverage on the vehicle in which the victim is riding is primary. We disagree. As we noted in Chedville, the purpose of the Hearty policy is to create a comprehensive scheme for the protection of the public from the damage caused by motor vehicles. However, the effectuation of this purpose is not impaired when, as here, the issue to be resolved is the apportionment of loss among insurance companies, because the total amount of compensation to the injured parties remains the same. Chedville, supra, at p. 5, 664 So.2d at 1313. Therefore, the Chedville court concluded that when the law is silent as to which coverage is primary, the trial court should base its decision on the language of the respective policies. Id.
The appellant contends that the instant case is distinguishable from Chedville because in Chedville, the policy covering the owner (the Archdiocese) was expressly designated as "excess auto liability" coverage. According to appellant, the instant case is more like Thomas v. Neeb-Kearney, 334 So.2d 465 (La.App. 4th Cir. 1976), in which this court found that the two insurance policies were not mutually repugnant. In Thomas, the plaintiff was injured in a motor vehicle accident caused by a truck driver in the employ of Neeb-Kearney. Dixie Leasing owned the truck, which was insured by Liberty Mutual. Neeb-Kearney, which leased the truck from Dixie, was insured by Aetna. The Aetna policy had an "Other Insurance" clause that said its coverage was excess as to non-owned autos. The Liberty Mutual policy had a "pro rata" clause. This court found that there was no conflict of insurance clauses because Liberty Mutual had the primary policy on the owned vehicle and Aetna had the excess coverage because as to it, the truck was a hired or non-owned vehicle.
We reject the appellant's contention that this case should be analogized to Thomas v. Neeb-Kearney. Unlike the policy involved in Thomas, the Progressive policy herein has more than merely the typical pro rata clause. Progressive's pro rata clause is immediately followed by the language: "However, any insurance afforded... for any person other than you ... is excess over any other collectible liability insurance." The policy defines "you" as "the named insured or his spouse who lives with him." Therefore, under the policy, Butscher qualifies as any person other than the named insured, Spiro, and the coverage becomes excess. Because of this language, the trial court found the two policies to be mutually repugnant, as each designates itself as excess under the specific circumstances involved. On this basis, the trial court applied the rule of Chedville.
We believe the trial court was correct in its analysis. The rule of law is that each of these cases must be judged according to the pertinent policy language. Although the instant case does not have precisely the same language as the policies in Chedville, each policy herein does contain language making its coverage excess to that of the other policy. Therefore, the trial court correctly found them to be mutually repugnant.
Despite our conclusion that the trial court correctly decided the legal issue presented by the Motion for Summary Judgment, however, we agree with the appellant that there remains a genuine issue of material fact as to the amount of damages. Because there was never a trial on liability or a judicial determination of damages, it is impossible to determine the *57 amount to which Progressive's right of contribution should be applied.
Progressive argues that liability is not at issue in this case; as both insurers settled with the plaintiff and the only issue remaining before the trial court was contribution. In support of this argument, Progressive cites language from our decision in Constans v. Choctaw Transport, Inc., 97-0863 at p. 15 (La.App. 4 Cir. 12/23/97), 712 So.2d 885, 893, writ denied, 98-0408 and 98-0412 (La.3/27/98), 716 So.2d 892. In Constans, we noted that the legislature created the substantive right of contribution to facilitate the voluntary payment of claims by nullifying the requirement that contribution among joint tortfeasors be limited to those matters already reduced to judgment.
Nevertheless, Constans does not support Progressive's position. That case arose out of a collision between an automobile and a large (tractor-trailer) truck. Guest passengers in the automobile sued the driver and owners of the truck, as well as the insurer of the automobile. The trucking defendants cross-claimed against the driver and the insurer of the automobile. Prior to trial, the trucking defendants settled with each of the guest passengers, who then dismissed their petition against the trucking interests, but reserved the rights of their "assignees and/or subrogors" to pursue their cause of action against the driver and insurer of the automobile. The trucking interests then filed an amended petition asserting they were legally subrogated to the rights of the guest passengers, and seeking indemnity and/or contribution for the amounts they had pain in settlement. The trial court struck the amended petition, but allowed the trucking defendants to proceed on the basis of their original cross-claim. At trial, the jury found the driver of the automobile solely at fault in causing the accident, and assessed damages for each of the guest passengers. The driver and his insurer appealed this judgment, and the trucking interests answered the appeal. We held that the parties who had settled had a right to contribution from the parties determined to be at fault by the trial court. Nevertheless, we found that their contribution-subrogation claim was limited to recovery of the amount that was determined actually to be owed to each guest passenger. Therefore, the trucking company interests were awarded reimbursement of the lesser of the amount paid in settlement to each passenger or the amount of actual damages as determined by the trial court for that passenger. Constans at pp. 19-20, 712 So.2d at 895.
In the instant case, even assuming we find that both insurers have admitted liability by failing to contest Butcher's sole fault in causing this single vehicle accident, we cannot award contribution absent either a joint stipulation or a judicial ruling as to the amount of damages. It would be patently unfair to force one tortfeasor to contribute a percentage of whatever amount the other tortfeasor chooses to offer in settlement and the injured party chooses to accept, unless that amount is clearly less than the amount of the injured party's damages.
Because there is a genuine issue as to the amount of damages suffered by the plaintiff, the trial court erred in granting Progressive's Motion for Summary Judgment. To succeed on its motion, Progressive would first have to prove that the actual amount of the plaintiff's damages equals or exceeds the total amount of the settlements ($765,000). In the absence of such proof, summary judgment is improper. Accordingly, we vacate the trial court's judgment and remand the matter to that court for further proceedings consistent with this opinion.
VACATED AND REMANDED.